**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DR. LE ANNE SILVEY,

Plaintiff,

v.

MICHIGAN STATE UNIVERSITY; LOU ANNA SIMON, in her individual and official capacity as President of the Michigan State University; THEODORE H. CURRY II, in his individual and official capacity as Associate Provost and Associate Vice-President; AMY BONOMI, in her individual and official capacity as Chair of the Department of Human Development and Family Studies,

Defendants.

**COMPLAINT**

**I. INTRODUCTION.**

1. Plaintiff, Dr. Le Anne Silvey ("Silvey" or "Plaintiff"), brings this action for prospective injunctive relief under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et seq.* ("ADEA"), and damages under the Elliott-Larsen Civil Rights Act ("ELCRA"), arising from a pattern of age discrimination and retaliation in and affecting the Michigan State University's ("MSU") Department of Human Development and Family Studies ("HDFS"). Silvey also alleges that her property interests were violated in violation of the Fourteenth Amendment to the United States Constitution.

2. The age discrimination, retaliation and deprivation of constitutional rights suffered by Silvey for engaging in protected activity was and remains institutionalized at the highest levels of power and authority at MSU.

3. As set forth in this Complaint, Silvey is a victim of MSU's institutional culture of silencing and punishing those that speak out, while covering up the unlawful conduct of their offenders.

## II. JURISDICTION AND VENUE.

4. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331 and over state law claims pursuant to 28 U.S.C. §1367.

5. This *ex parte Young* action for injunctive and ancillary relief against individual state officers in their official capacities is outside the scope of immunity afforded to the State of Michigan by the Eleventh Amendment to the United States Constitution.

6. Venue in this Court is proper under 28 U.S.C. §1391 (b) because the events giving rise to this claim took place in this judicial district and Defendants reside in this judicial district.

## III. PARTIES.

7. Silvey, at all times relevant, is a tenured Associate Professor in HDFS. Her primary area of research and teaching is Human Development and Family Diversity. Silvey's birthdate is July 23, 1958, and she is 59 years old as of the filing of this Complaint.

8. Defendant, Lou Anna Simon ("Simon"), at all times relevant, was the President of MSU. As President of MSU, Simon was responsible for managing and directing all of the affairs of MSU. She was responsible for issuing directives and executive orders consistent with the policies of MSU, including policies and practices associated with the avoidance of age based discrimination and retaliation.

9. Defendant, Theodore H. Curry II ("Curry"), at all times relevant, is the Associate Provost and Assistant Vice President for Academic Human Resources of MSU. As Associate Provost and Associate Vice President for Academic Human Resources, Curry is responsible for managing

and directing the Office of Academic Human Resources ("AHR"), including developing and maintaining academic human resources policies and procedures for MSU's academic staff and faculty. Among his responsibilities, Curry approves discipline of faculty and, in fact, did so with respect to discipline imposed against Silvey.

10. Defendant, Amy Bonomi ("Bonomi"), at all times relevant, is the Chair of HDFS. As Chair, Bonomi was Silvey's direct supervisor and possessed the authority to, among other things, assign Silvey her job duties, evaluate her job performance, recommend and implement discipline.

## IV. FACTUAL ALLEGATIONS.

### A. Silvey's Employment with Michigan State University.

11. HDFS is a department within the College of Social Science ("CSS") that focuses on translational research impacting children, adolescents, families and marginalized communities.

12. Silvey began her career at MSU in 1999 as an Assistant Professor in HDFS. In 2009, she became a tenured Associate Professor in HDFS.

13. From 2010 to 2015 Silvey was the Acting Director and Director of the American Indian Studies Program ("AISP") which is a department within the College of Arts and Letters ("CAL"). During this time, Silvey's full-time faculty assignment was split 50% in CAL and 50% in HDFS, and her research and teaching workloads were adjusted to reflect these assignments.

14. In the years prior to Defendants' pattern of age discrimination and retaliation, Silvey received favorable performance reviews, received substantial grant awards, presented at academic conferences, served on academic committees, partnered with Native American health and family services, received numerous awards and honors, authored academic articles and

reports, participated in service and outreach, acted as an advisor and committee member to undergraduates and graduate students, and had numerous professional affiliations.

**B. A Pattern of Age Discrimination Emerges in HDFS.**

15. In August 2013, Bonomi was hired by MSU and appointed as the Chair of HDFS. Prior to being hired by MSU, Bonomi was an Associate Professor at The Ohio State University and had no administrative experience. Bonomi's hiring marked the beginning of a lengthy pattern of discrimination and retaliation against older faculty in HDFS, including against Silvey.

16. At the time of Bonomi's hiring by MSU, HDFS included six (6) faculty who were 60 years of age or older; Esther Onaga, Julia Miller, Barbara Ames, Lawrence Schiamberg, Lillian Phenice, and Robert Griffore.

17. Since Bonomi's hiring by MSU, all of the faculty members age 60 years or older have retired or have agreed to retire after being subjected to diminished work assignments and research opportunities and unfavorable performance reviews by Bonomi.

18. Since Bonomi's hiring by MSU, HDFS has hired seven (7) faculty under age 40; Sarah Douglas, Kendal Holtrop, Megan Maas, Heather McCauley, Amy Nuttall, Yijie Wang and Andrea Wittenborn.

19. The pattern of age discrimination at MSU is not isolated to only HDFS, but was practiced throughout CSS since at least November 2016.

20. In November 2016, CSS issued a "Fall Planning Letter: Metrics Supplement" ("Fall Planning Letter") that described initiatives to improve the rankings of departments or units within CSS as compared to other research universities in the American Association of Universities ("AAU").

21. As described herein, the Fall Planning Letter reviewed the rankings of each unit or department within CSS and noted each departments' plans to improve its rankings when compared to other similar AAU departments and contained numerous age-based comments, references and initiatives.

22. The age-based initiatives described in the Fall Planning Letter include: "Making more regular use of performance improvement plans, variable teaching loads and post-tenure review to encourage and enable increased productivity by senior faculty."

23. Applying age-based criteria, the Fall Planning Letter described in its review of the political science department: "Multiple faculty depicted in the graph have submitted retirement notices and the junior faculty rank very well among their peers."

24. In its review of the psychology department, the Fall Planning Letter noted: "This is a department where differential teaching loads and performance improvement plans can go a long way toward improving performance of senior faculty in quartiles 4 and 5."

25. With respect to HDFS, the Fall Planning Letter noted: "The department has instituted new faculty evaluation procedures, hired only grant active faculty, initiated performance improvement plans, and experimented with reward structures for improved and/or high-performance. The quintile chart highlights the performance issues among the senior faculty, **which are being actively addressed**" (Emphasis provided).

26. These age-based initiatives implemented by Bonomi in HDFS were used to "actively address[ed]" performance issues of senior faculty in a concerted effort to force their retirements.

### C. Bonomi Develops and Implements An Annual Performance Evaluation That Discriminated Against Older Faculty.

27. As described in the Fall Planning Letter, in February 2016 Bonomi developed and implemented a new annual performance evaluation and point system that disadvantaged and discriminated against older, senior HDFS faculty, including Silvey.

28. Moreover, the new evaluation system was not properly approved by HDFS faculty as required by its By-Laws.

29. The new evaluation system is also in conflict with the HDFS Research Plan ("Research Plan") that was updated in March 2016 and which provided that: "[t]he standard workload expectations for tenured faculty members is 50% research, 38% instruction (three courses per year), and 12% service/outreach."

30. The new evaluation system implemented by Bonomi "actively addressed" and targeted for retirement older, senior faculty as it favored younger, junior faculty members who teach less and research more by assigning greater points to research and less to teaching. As such, for older, senior faculty members with heavy teaching assignments it is difficult to receive the points necessary to achieve high performance evaluations.

31. Significantly, and as a way to disadvantage older, senior faculty members, the workload assignments for each faculty member in HDFS and how their work assignments are allocated between research, teaching and service/outreach are determined by Bonomi.

32. Since Bonomi's hiring by MSU, Bonomi assigned younger, junior faculty lighter teaching workloads and heavier research assignments, thereby allowing them to devote more time to the point rich research and publication metrics which are necessary to receive high performance evaluations under the new evaluation system.

33. Conversely, since Bonomi's hiring by MSU, older, senior faculty, including Silvey, were assigned heavier teaching workloads, and were not afforded the time necessary to devote to research and publication to earn points in that metric of their evaluations under the new evaluation system.

34. Other older, senior faculty members were assigned similar workload assignments as Silvey, and similarly scored low in their performance evaluations. Seeing the writing on the wall, the older, senior faculty members identified in paragraph 17 of the Complaint elected to accept early retirement packages offered by Bonomi.

35. More specific to Silvey, her workload assignment in 2015-2016 was 50% teaching, 37.5% research, and 12.5% service/outreach. While this aligned with the standard workload identified in the Research Plan, younger, junior faculty members were assigned research workloads by Bonomi in conflict with the Research Plan ranging from 50% to as high as 70%, and giving them a distinct advantage over older, senior faculty members in receiving positive performance evaluations.

36. As a result of this discriminatory conduct, Silvey did not achieve enough points to obtain a positive performance evaluation rating and under the new evaluation system, as a result, was placed on performance improvement plans ("PIPs") by Bonomi.

37. The PIPs imposed on Silvey were pretext for age discrimination and retaliation as they were designed not to allow Silvey to succeed and improve.

38. In addition to the unbalanced work assignments that discriminated against older, senior HDFS faculty, points under the new evaluation system are awarded for "service" to faculty members who are appointed to serve on department or college committees.

39. Like faculty workload assignments, Bonomi controlled the appointment of faculty service on committees and appointed many younger, junior faculty members to point rich committees, while denying Silvey and other older, senior faculty members similar committee assignments.

40. More specific to Silvey, on March 22, 2017, Bonomi denied the request of an HDFS doctoral candidate, Ann Dunlop, that Silvey be assigned as her dissertation chair, a position that would have earned Silvey points on her annual performance valuation.

41. However, in April 2017, Bonomi permitted a first-year Assistant Professor, Yijie Wang, to be nominated to serve on the HDFS Department Advisory Committee ("DAC"), despite DAC's admonition that it is "too soon" for first-year faculty to serve on DAC. Wang was under age 40.

**D. Bonomi Retaliates and Disciplines Silvey.**

42. On March 23, 2016, Silvey and HDFS faculty members, Robert Griffore and Lillian Phenice, met with Curry and raised concerns about Bonomi's treatment of older, senior HDFS faculty.

43. On June 1, 2016, and in retaliation for her protected activity, Silvey received a Notice of Proposed Disciplinary Action ("Proposed Discipline") from Bonomi.

44. Additionally, Griffore and Phenice were retaliated against and pressured by Bonomi to accept offers of early retirement.

45. Silvey's Proposed Discipline included: (1) reducing her workload assignment to 50% for the Fall 2016 semester; (2) eliminating her teaching responsibilities for the Fall 2016 semester; and (3) requiring first-author publications, manuscripts, and scholarly presentations, along with reporting requirements. Her pay and benefits were reduced accordingly to reflect her part-time status.

46. After receiving the Proposed Discipline, Silvey engaged in further protected activity by emailing Curry on June 2, 2016, advising him that Bonomi informed a group of HDFS graduate students that she was brought to MSU to get rid of older faculty members and to replace them with younger faculty.

47. On June 7, 2016, Curry forwarded Silvey's June 2 email to the MSU Office of Institutional Equity ("OIE") Director, Ande Durojaiye, and copied Bonomi with Silvey's email.

48. On July 14, 2016, Silvey met with Bonomi and Neal Schmitt, Interim Dean of the CSS, to discuss the serious disciplinary action proposed by Bonomi.

49. At this meeting, Schmitt and Bonomi pressured Silvey to accept an offer of early retirement.

50. On July 19, 2016, Silvey emailed Schmitt a counter proposal to their offer of early retirement. That same day, Bonomi summarily rejected Silvey's counter proposal and implemented the serious disciplinary action.

51. In response, Silvey filed a grievance on August 10, 2016, pursuant to the MSU Faculty Grievance Policy over her discipline, the PIP and violations of the HDFS By-Laws by Bonomi. In addition, on August 16, 2016, Silvey filed a complaint with the OIE alleging retaliation by Bonomi.

52. The grievance was initially dismissed on August 26, 2016 on "jurisdictional grounds," but reinstated after an appeal.

53. On November 9, 2016, the grievance was submitted to an internal voluntary "mediation" process wherein MSU offered to allow Silvey to work through the 2017 academic year and, thereafter, be placed on a leave of absence and remain as an unpaid faculty member without

workload assignments, and then finally "retire" in 2020. Silvey rejected this offer from MSU and mediation efforts failed in December 2016.

54. In retaliation, on February 2, 2017, Silvey was again subjected to serious discipline, reducing her assignment to 50% for the Spring 2017 semester. She was also issued another PIP and threatened with dismissal by Bonomi if she did not meet the PIP requirements.

55. This serious discipline was issued contrary to MSU's Discipline and Dismissal of Tenured Faculty for Cause Policy ("Cause Policy").

56. The Cause Policy requires that the University Committee on Faculty Affairs ("UFCA") establish a standing three-person Discipline Review Panel ("DRP") to assess and provide a recommendation as to whether serious disciplinary action should be imposed by a unit administrator against the faculty member.

57. However, MSU and the UFCA failed to empanel a three-person DRP of the UFCA, and the serious discipline was issued to Silvey without it being reviewed by the DRP.

58. Moreover, by not empaneling a DRP before issuing the serious discipline, Silvey was denied her right under the Cause Policy to meet with the DRP and to provide her evidence and arguments as to why the serious discipline should not be imposed by Bonomi.

59. On July 6, 2017, Bonomi imposed another serious discipline on Silvey, this time reducing her academic appointment from August 16, 2017 to February 16, 2018, to "0%,"which is a full suspension without pay or any responsibilities, including research, teaching or service in HDFS or MSU, or any responsibility to attend departmental or college meetings. Again, the decision by Bonomi to issue the serious disciplinary action was made without empaneling a DRP to assess and provide a recommendation of whether Bonomi should impose the serious discipline against Silvey.

60. By not empaneling a DRP before issuing the serious discipline, Silvey was denied her right under the Cause Policy to meet with the DRP and to provide her evidence and arguments as to why the serious discipline should not be imposed by Bonomi.

61. The terms of the July 6 suspension required Silvey to, among other things, publish two (2) manuscripts, submit two (2) additional manuscripts and submit two (2) federal research grant submissions, all while being suspended without pay and benefits, and while being prohibited from attending HDFS or college meetings.

62. Despite being expected to publish manuscripts and submit grants, MSU has continued to discriminate and retaliate by refusing to pay Silvey for grant work funded and performed for the Substance Abuse Mental Health Services Award # 1H79SMO63505-01.

63. This conduct continues a pattern of discrimination and retaliation by establishing work performance expectations that cannot be achieved by Silvey while on 50% or full suspensions.

64. Since Bonomi began as HDFS Chair she has consistently used a combination of evaluations, PIPs, and discipline to target older, senior faculty and pressure them into retiring from MSU. This has been done in concert with the November 2016 Fall Planning Letter from CSS to make "more regular use of performance improvement plans, variable teaching loads, and post-tenure review" for senior faculty, and specifically with reference to HDFS, noting the "performance issues among the senior, older faculty, which are being actively addressed" using PIPs and the new faculty evaluation process.

65. Since Bonomi began as HDFS Chair, she has been openly hostile to older, senior faculty in HDFS and has engaged in a pattern of harassment, punishment, and elimination of older, senior faculty, while showing favoritism toward promoting younger, junior faculty. This

discriminatory conduct took place with the knowledge, approval, and ratification of MSU administrators including Simon and Curry.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

66. On March 9, 2017, Silvey filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging race and age discrimination, and retaliation. On July 26, 2017, Silvey filed a second charge of discrimination with the EEOC alleging race and age discrimination, and retaliation arising out of the July 6, 2017 serious discipline. On March 27, 2018, the EEOC issued Notice of Right to sue letters for both charges described above.

67. Through these timely charges of age discrimination and retaliation, which were filed more than 60 days prior to the initiation of this action, Silvey has satisfied all administrative prerequisites to this action under the Age Discrimination in Employment Act.

68. Because MSU is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of M.C.L. §600.6431 Plaintiff filed a Notice of Intent to File Claim with the Michigan Court of Claims on January 25, 2018.

## VI. CLAIMS FOR RELIEF

### Count I - Discrimination in Violation of the Age Discrimination in Employment Act.

69. Silvey realleges and incorporates the above paragraphs as if fully set forth herein.

70. Silvey, who is over the age of 40, was subjected to adverse employment actions by Defendants, including a hostile work environment, and discipline resulting in the elimination of her full-time faculty position along with its associated wages and benefits, all because of her age.

71. These and other actions constituted age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et seq.*

**Count II - Retaliation in Violation of the Age Discrimination in Employment Act.**

72. Silvey realleges and incorporates the above paragraphs as if fully set forth herein.

73. Silvey opposed and participated in actions contesting Defendants' age-based discriminatory actions against herself and other HDFS faculty and employees and, as a result, was subjected to materially adverse actions by Defendants, including a hostile work environment, and discipline resulting in the elimination of her full-time faculty position along with its associated wages and benefits, all in retaliation for her protected activity.

74. These and other actions constituted retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et seq.*

**Count III – Discrimination in Violation of the Elliot-Larsen Civil Rights Act**

75. Silvey realleges and incorporates the above paragraphs as if fully set forth herein.

76. Silvey, who is over the age of 40, was subjected to adverse employment actions by Defendants, including a hostile work environment, and discipline resulting in the elimination of her full-time faculty position along with its wages and benefits, all because of her age.

77. These and other actions constituted age discrimination in violation of the Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

**Count IV - Retaliation in Violation of the Elliot-Larsen Civil Rights Act**

78. Silvey realleges and incorporates the above paragraphs as if fully set forth herein.

79. Silvey opposed and participated in actions contesting Defendants' age-based discriminatory actions against herself and other HDFS faculty and employees and, as a result, was subjected to materially adverse actions by Defendants, including a hostile work environment, and discipline resulting in the elimination of her full-time faculty position along with its wages and benefits, all in retaliation for her protected activity.

80. These and other actions constituted retaliation in violation of the Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

**Count V – Violation of Silvey's Due Process Rights**

81. Silvey realleges and incorporates the above paragraphs as if fully set forth herein.

82. Silvey has a property interest in her employment as a tenured Associate Professor which is protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution as her employment status cannot be adversely affected by Defendants except as provided in MSU's "Discipline and Dismissal of Tenured Faculty for Cause – Faculty Handbook."

83. Silvey was deprived of this protected interest by the serious discipline imposed by Defendants which included a reduction in her faculty assignment to 50%, or part-time, and finally to a reduction in her faculty assignment to "0," or a full suspension. Both disciplines resulted in a loss of pay and benefits to Silvey.

84. Before imposing the serious disciplines described above, Silvey was not afforded adequate procedural rights by, among other things, the failure of Defendants to empanel a DRP which would have allowed Silvey the opportunity to present her evidence and arguments as to why the serious disciplines should not have been imposed.

85. These and other actions by Defendants deprived Silvey of her constitutional due process rights in violation of 42 U.S.C. §1983.

**VII. PRAYER FOR RELIEF**

86. WHEREFORE, Plaintiff, Dr. Le Anne Silvey, requests the following relief from Defendants: (1) injunctive relief ordering the reinstatement of Silvey by Defendants to her former full-time position and prohibiting further age discrimination and retaliation; (2) Silvey's back pay, front pay and benefits that she is entitled to due to Defendants' age discrimination and

retaliation; (3) damages suffered by Silvey for outrage, humiliation, embarrassment and mental anguish as a result of Defendants' willful and intentional unlawful acts; (4) punitive damages; (5) Silvey's reasonable attorneys' fees and the costs of this action; and (6) such other and further relief as this Court deems just and equitable.

DATE: 4/24/2018

Respectfully submitted,

THE KARMEL LAW FIRM

/s/Jonathan D. Karmel____________
Jonathan D. Karmel (P77483)
Attorney for Plaintiff

221 N. LaSalle Street, Ste. 1550
Chicago, IL 60601
(312) 641-2910
jon@karmellawfirm.com